**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00826-WJM-NYW

ISAAC GURULE,

      Plaintiff,

v.

BRENT AMBUEHL, Officer (Individual Capacity), and
MICHAEL FINN, Officer (Individual Capacity),

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

This civil action is before the court on Defendant Michael Finn's Motion to Dismiss, [#45, filed December 12, 2017], and Defendant Brent Ambuehl's Motion to Dismiss, [#52, filed February 6, 2018]. These Motions were referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated October 6, 2017 [#21] and the memoranda dated December 13, 2017 [#46] and February 6, 2018 [#53]. For the reasons set forth below, this court respectfully **RECOMMENDS** that Defendant Finn's Motion to Dismiss be **GRANTED** and that Defendant Ambuehl's Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

Plaintiff Isaac Gurule initiated this action on April 3, 2017, by filing *pro se* a form Prisoner Complaint asserting a single claim pursuant to 42 U.S.C. § 1983 for excessive force in violation of his Fourth Amendment rights under the Constitution. [#1]. The court granted Mr. Gurule leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, [#7], and ordered Mr. Gurule

to file an amended pleading. [#8]. On September 15, 2017, Mr. Gurule filed an Amended Complaint, adding two claims for violation of his rights arising under the Eighth and Fourteenth Amendments. [#17]. Pursuant to § 1915 and Local Rule 8.1, the court dismissed all but the Fourth Amendment claim for excessive force asserted against Defendants Brent Ambuehl and Michael Finn in their individual capacity.[1] The court then reassigned the matter to the Honorable William J. Martinez, who referred the case to the undersigned Magistrate Judge for pretrial management. *See* [#20; #21]. The following facts are derived from the Amended Complaint and taken as true for the purposes of this Recommendation.

On March 31, 2015, several law enforcement officers from the Colorado Springs Police Department ("CSPD") and its divisions assembled at an Econo Lodge in Colorado Springs to execute a warrant for Plaintiff's arrest. The arrest warrant addressed Plaintiff's failure to return to a community corrections facility after he had signed out for work, one month earlier. Mr. Gurule, who apparently knew of the officers' presence, exited the motel from a second story window. He landed barefoot on a rocky landscape and fell forward to the ground. Plaintiff states that he was temporarily disoriented from the fall and, as he attempted to stand up, Defendants Finn and Ambuehl released a police dog, Dax, who bit Plaintiff and caused a severe injury to his left arm. Plaintiff states that Defendants released Dax without warning, and that Plaintiff did not pose any threat to the police officers at the time they released the dog. Plaintiff alleges that Dax "remained solidly attached [to his arm] while [Defendants] casually strolled over to the Plaintiff

---

[1] As explained in that Order, under § 1915(e)(2)(B), and facilitated by D.C.COLO.LCivR 8.1, the court must dismiss an action if Plaintiff's claims are frivolous or malicious. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

who was 7-10 ft away." [#17 at 7]. Plaintiff received emergency medical treatment for the wound, followed by surgery, and now suffers from permanent disfigurement and impairment of arm function as a result of the attack. [*Id.* at 7, 10]. He seeks monetary damages.

Defendant Finn filed his Motion to Dismiss on December 12, 2017, [#45], and Defendant Ambuehl filed his Motion to Dismiss on February 6, 2018, [#52]. Despite instruction from the court, *see* [#48, #54], Plaintiff did not file a Response to either Motion and has not asked for additional time in which to do so. Thus, these Motions are now ripe for adjudication.

## STANDARD OF REVIEW

Defendants collectively argue that Mr. Gurule fails to state a cognizable claim. Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the

plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Gurule is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

### I.     Applicable Law

#### A.        42 U.S.C. § 1983

Plaintiff asserts a claim for excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, which allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). To assert a claim under section 1983, Plaintiff must show (1) that he had a right secured by the Constitution and laws of the United

States that was violated (2) by a person who acted under color of state law. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). "A defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted). The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156-57 (10th Cir. 2001).

**B.     Qualified Immunity**

Defendants each assert entitlement to qualified immunity. *See* [#45 at 5; #52 at 3]. The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted)). Qualified immunity is an affirmative defense to § 1983 liability, (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

**C.     Excessive Force in Violation of the Fourth Amendment**

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey v. City of Federal Heights,* 509 F.3d 1278, 1281 (10th Cir. 2007). Claims of excessive force are analyzed under the objective reasonableness standard of

the Fourth Amendment. *See, e.g., Graham v. Connor,* 490 U.S. 386, 395 (1989); *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396). A "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1314 (10th Cir. 2002) (further citation omitted)).

## II.    Application

As an initial matter, Defendants do not dispute that a seizure occurred, and this court finds that Dax's apprehension of Plaintiff constitutes a seizure. *See Couture v. Bd. of Educ. of Albuquerque Public Sch.,* 535 F.3d 1243, 1250 (10th Cir. 2008) (asking first in the analysis of Fourth Amendment claim whether there was a seizure); *Brower v. Cnty. of Inyo,* 489 U.S. 593, 596 (1989) ("[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control"). Mr. Gurule's claim for excessive force in violation of his Fourth Amendment rights is based on the injury he received incident to his encounter with the police dog. A liberal reading of the Amended Complaint indicates that Plaintiff's sole claim should be analyzed as consisting of two separate theories of excessive force:  Defendants' decision to dispatch Dax; and

Defendants' decision to wait to command Dax to release Plaintiff after Dax had been dispatched.[2]

Defendant Finn argues first that Plaintiff fails to allege facts to support that he personally participated in the alleged constitutional violation, such as by alleging that he "had the ability or responsibility to control Dax," that Finn "handcuffed [Plaintiff] in an illegal manner or that [Plaintiff] suffered any injury as a result of being handcuffed," that Finn "could have prevented [Plaintiff's] injury by reaching him sooner," or that Finn "could have ordered Dax to release [Plaintiff]." [#45 at 4-5]. Defendant Finn argues second that Plaintiff does not allege facts to suggest that CSPD's use of Dax was objectively unreasonable. [*Id.* at 6]. Defendant Ambuehl, whom Plaintiff identifies as "canine dog handler," [#17 at 9], does not argue lack of personal participation, but contends that the facts as alleged demonstrate that the use of Dax was objectively reasonable. [#52 at 5-6].

**A.     Dispatch of Dax**

1.     <u>Personal Participation of Defendant Finn</u>.

The court first considers Defendant Finn's argument that he cannot be liable for any Fourth Amendment violation because he did not personally participate, either in dispatching Dax or ordering Dax to release Plaintiff. Plaintiff alleges that he "exited the motel from a two story window and fell to the ground onto a rocky landscape that caused him to fall forward," that he "was temporarily disoriented from the fall," and "[a]s he was trying to stand up, Defendants Finn

---

[2] *See Becker v. City of Evansville*, No. 3:12–cv–182–WGH–TWP, 2015 WL 328895, at *11 (S.D. Ind. Jan. 26, 2015) ("even where deploying a dog to bite and hold a suspect is reasonable, an officer may use excessive force by allowing the dog to continue biting and holding a suspect who has ceased to pose a threat to fight or flee."). This court uses "dispatch" to refer to the initial command to Dax, and "release" to refer to the subsequent command to Dax to release Mr. Gurule from his grip.

and Ambuehl released [Dax]."   [#17 at 5].   Contrary to Defendant Finn's argument, this allegation is sufficient to state his personal participation in the dispatch of Dax.   While the court recognizes it might be unlikely that two officers would simultaneously command a police service dog to engage, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955) (further citation omitted)).   Thus, the court finds that Plaintiff has alleged Defendant Finn's personal participation in the decision to dispatch Dax, and now turns to whether qualified immunity should apply, i.e., (1) whether Mr. Gurule has sufficiently stated a cognizable violation against Defendants Finn and Ambuehl arising from the dispatch, and (2) whether such an alleged constitutional violation was clearly established.

2.      Qualified Immunity

Before proceeding, this court pauses to note the fact-intensive nature of excessive force claims, and that review of those claims necessarily turns on the unique circumstances of the particular incident under review.   Whether a use of force is reasonable depends on all of the circumstances known to the officer at the time of the arrest, but at this juncture, on Motions to Dismiss, the court does not make any factual or credibility determinations.   *Henderson v. Glanz*, No. 12-CV-68-TCK-FHM, 2012 WL 5931546, at *3 (N.D. Okla. Nov. 27, 2012).   And though this court will not act as Plaintiff's advocate, it notes that "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."   *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003).

*Has Plaintiff Sufficiently Pled a Constitutional Violation.*

First, the court considers whether Mr. Gurule has sufficiently pled a cognizable Fourth Amendment violation arising from Defendants' dispatch of Dax.  Both Defendants contend that Mr. Gurule has failed to allege sufficient facts, taken as true, to state a plausible claim that their actions were objectively unreasonable.  [#45 at 6-7; #52 at 4-5].  In analyzing Defendants' arguments, the court pays careful attention to Plaintiff's allegations in the context of the three *Graham* factors discussed above:  (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  *See Graham,* 490 U.S. at 396.

It is undisputed that Mr. Gurule failed to return to the community corrections center, had an active warrant for his arrest, and jumped barefoot out of a second-story window when officers arrived with his arrest warrant.  [#17].  With respect to the severity of the underlying crime, Defendants assert that Plaintiff's failure to return to the community corrections program constitutes an Attempt to Escape, as defined by Colorado law, *see* Colo. Rev. Stat. § 18-8-208.1,[3] and cite *United States v. Roybal* for support that an Attempt to Escape charge is treated as an inherently significant and violent crime.  17 F. App'x 920, 922 (10th Cir. 2001) ("We have

_____

[3] The statute states that a person in custody or confinement following conviction of a felony who "knowingly attempts to escape from said custody or confinement," thereby commits a class 4 felony.  *Id.* at § 18-8-208.1(1).  The statute further states that "[a] person who participates in a work release program, a home detention program…a furlough, an intensive supervision program, or any other similar authorized supervised or unsupervised absence from a detention facility, as defined in section 18-8-203(3), and who is required to report back to the detention facility at a specified time shall be deemed to be in custody."  *Id.* at § 18-8-208.1(6).  Defendant Ambuehl attaches to his Motion to Dismiss a copy of Plaintiff's plea to the charge of Attempt to Escape, [#52-1], and asserts that the court can take judicial notice of the plea without converting the Motion to one for summary judgment.  *See* [#52 at 5].  The court takes judicial notice of the plea, *see United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), but notes that it does not affect the analysis set forth herein.

repeatedly held that, regardless of the facts underlying a particular escape, the offense of escape, by its nature, presents a serious potential risk of injury to another…") (quoting *United States v. Mitchell,* 113 F.3d 1528, 1533 n.2 (10th Cir. 1997)).  However, Plaintiff alleges in the Amended Complaint that his arrest was for failing to return to a community corrections center a month before, and not for the commission of a crime immediately preceding the arrest.  *See* [#17 at 5]. *See also Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016) (noting in discussion of *Graham* factors that underlying crime, for which there was an arrest warrant, was a serious felony, but that "the alleged crime had taken place several weeks" prior to execution of arrest warrant, and arrestee was not armed at time of arrest).  As was the case in *Becker*, although Plaintiff was sought for the commission of a serious crime, there is no indication he was considered to be armed or dangerous at the time of his arrest.

Similarly, as to the second criterion, i.e., the potential threat the suspect poses to the safety of the officers and any third parties, there is again nothing to suggest that Mr. Gurule was armed at the Econo Lodge, or that the CSPD officers or third parties were in danger or considered themselves to be in danger; thus this criterion weighs in Plaintiff's favor.  Plaintiff alleges that his jump from the second story window "caused him to fall forward," and that he was "temporarily disoriented from the fall."  [#17 at 4].  He alleges that "[a]t no time did [he] make any adverse actions," "[t]here were/are no alleged facts that would indicate that the Plaintiff posed any threat," and Defendants offered "[n]o warning about the release of the police dog," or otherwise gave him "any verbal commands."  [*Id.* at 5, 7].  Plaintiff also alleges that Defendant Ambuehl "allow[ed] [Dax] to viciously attack the already submissive plaintiff…[for] over a minute…mauling [] the plaintiff's left bicep/elbow area," and that Defendant Finn

"handcuffed the Plaintiff's right arm while [Dax] was still attached to the Plaintiff's left arm." [*Id.* at 9].

As to the third criterion, whether the suspect attempted to resist or evade arrest, Plaintiff apparently had warning of Defendants' presence and their intent to execute an arrest warrant. At the time Defendants deployed Dax, Plaintiff had demonstrated his inclination to evade arrest by exiting the motel room through the second-story window, barefoot. At that point, Plaintiff had been in escape status for approximately one month. *See* [#17 at 4, 5]. I agree with Defendants that a reasonable officer "could conclude that by attempting to stand, Plaintiff was attempting to continue his escape." [#45 at 7]. But as discussed above, Mr. Gurule pleads that the fall caused him to be "temporarily disoriented," and that he was "struggling to stand." [#17 at 4, 6].

Though a close call, given the fact that at this juncture, the court takes all the well-pled facts of the Amended Complaint as true and construes them in favor of Plaintiff, this court finds that Plaintiff has sufficiently pled a Fourth Amendment excessive force claim. *Livingston v. Wright*, No. 16-CV-2129-WJM-MEH, 2017 WL 3896441, at *5 (D. Colo. Sept. 6, 2017) (weighing *Graham* factors and finding plaintiff alleged excessive force in violation of his Fourth Amendment rights). Indeed, the Tenth Circuit has observed that "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Casey*, 509 F.3d at 1285. Although Plaintiff had attempted to evade arrest, he was also on the ground and allegedly "submissive" when Dax was dispatched. [#17 at 9]. *Cf. Katterman v. Salt Lake City*, No. 2:13–cv–1122–EJF, 2017 WL 1207518, at *8 (D. Utah Mar. 31, 2017) (finding on motion for summary judgment that use of police dog to seize plaintiff violated Fourth Amendment where plaintiff did not resist arrest or flee and had no warning that the officer was

looking for him, and no evidence suggested he was armed), *appeal docketed*, No. 17-4064 (10th Cir. Apr. 27, 2017); *Moore v. Summer*, No. 12–3204–SAC, 2015 WL 1470290, at *1, 9 (D. Kan. Mar. 31, 2015) (denying motion to dismiss excessive force claim where plaintiff alleged he was standing in the yard in front of a residence "with his hands up" when defendant officer "pulled in front of the house," and released police dog from patrol car "without reason"). By contrast, the release of a police dog in the middle of the night in a residential neighborhood to locate a man known to be armed, who had threatened his wife, threatened suicide, and vaguely threatened the officers in pursuit did not constitute excessive force. *Thomson*, 584 F.3d at 1317.[4] There is also no suggestion in the Amended Complaint that Mr. Gurule led officers on a foot chase and then hid in bushes for several hours, *cf. Mendoza v. Block,* 27 F.3d 1357, 1358–59 (9th Cir. 1994), or involved them in a high speed car chase, *cf. Marquez,* 399 F.3d at 1221.

Instead, according to Plaintiff, three teams of CSPD officers assembled at the Econo Lodge to arrest Plaintiff, and only Plaintiff. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) ("this is not the case of a single officer attempting to control and detain multiple suspects."). His whereabouts were apparently known (a motel room in the Econo Lodge, and then the ground outside the motel room); and he was stationary, in the process of getting to his feet, when Defendants, standing several feet away, dispatched Dax.[5] *See* [#17 at 4]. Significantly, Plaintiff alleges Defendants offered no warning that they would unleash Dax if he

---

[4] The court notes that *Thomson* involved an additional component of whether the release of the police dog constituted deadly force. If the use of a police dog is considered deadly force, then the officer who released the dog "would have used reasonable force only if it is shown that [plaintiff] posed 'an immediate threat to police officers or civilians.'" *Marquez*, 399 F.3d at 1220, n.1 (quoting *Tennessee v. Garner,* 471 U.S. 1, 11 (1985)). There is no argument here that the release of Dax constituted deadly force. *See Thomson*, 584 F.3d at 1315 (declining to deem a police dog's ability to bite and hold sufficient to make the dog's release, alone, an act of deadly force).

[5] Plaintiff alleges Defendants were seven to ten feet away when Dax bit him. [#17 at 9].

failed to surrender. *Cf. Trujillo v. City of Lakewood, Colo.*, No. 08–cv–00149–WDM–CBS, 2009 WL 3260724, at *3 (D. Colo. Oct. 9, 2009) (denying qualified immunity on summary judgment motion in light of disputed facts as to whether officer released dog into alley with no warnings); *Archuletta v. City of South Salt Lake*, No. 2:12–CV–703–TC, 2014 WL 5149298, at *10 (D. Utah Oct. 14, 2014) (finding on motion for summary judgment that officer acted objectively reasonably in releasing canine into crawl space, after giving several warnings, not knowing if a person was hiding in it or if the person was armed and dangerous).[6] Accordingly, I find Plaintiff has stated a claim for the violation of his Fourth Amendment rights arising from Defendants' decision in the first instance to dispatch Dax.

b.  *Is the Constitutional Right Clearly Established.*

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009) (citation omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cruz v. City of Laramie,* 239 F.3d 1183, 1188–89 (10th Cir. 2001) (quoting *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992)). In determining whether the plaintiff has met his burden of establishing a constitutional violation that was clearly established, the court construes the facts in the light most favorable to the plaintiff as the nonmoving party. *Scott*

---

[6] There is no Tenth Circuit or Supreme Court precedent stating that a verbal warning is mandatory in every case where a police dog is utilized; and, even in cases involving the use of deadly force, the Supreme Court has recognized that "a warning should be issued 'where feasible,' rather than recognizing a per se rule on this issue." *Brown*, 651 F. Supp. 2d at 1226-27 (quoting *Tennessee,* 471 U.S. 1).

*v. Harris,* 550 U.S. 372, 378, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *see Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009) ("The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity.").  The court first considers "if the amended complaint sufficiently alleged violation of a constitutional right because '[i]n the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established.'" *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (quoting *Mimics, Inc. v. Vill. of Angel Fire,* 394 F.3d 836, 841–42 (10th Cir. 2005) (alteration in original) (further citations omitted)).

It is clearly established in this and every other Circuit that a police officer may not use excessive force in arresting an individual.  *See, e.g., Casey*, 509 F.3d at 1282-84.  However, while this right is recognized in a general sense, "the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008) (citation omitted).  The Supreme Court has provided the following instruction:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations and internal quotations omitted).  A case directly on point is not required for a right to be clearly established, and "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at

741.  *See Casey*, 509 F.3d at 1284 ("because excessive force jurisprudence requires an all-things-considered inquiry with 'careful attention to the facts and circumstances of each particular case,' there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern.") (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).  However, "specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

    As previously stated, Plaintiff alleges in relevant part the following:

    [He] exited a window that was two stories above the ground and fell onto a rocky landscape that caused him to fall forward. Plaintiff was barefoot at the time and the impact caused him to become temporarily disoriented.  Struggling just to stand, it was obvious that the Plaintiff was in no condition to move or put up any resistance.  Upon attempting to stand, Defendant Ambuehl…released [Dax].

[#17 at 6].  Plaintiff alleges that "upon landing on the rocky landscape [he] never made any aggressive attempt(s) to engage any of the surrounding officers," and at no time did he "make any adverse action(s)."  [*Id.* at 6-7].

    Given these allegations, the court considers the state of the law surrounding an officer's decision to release a police service dog to apprehend a suspect who has fled from a second story window in the course of an arrest.  As stated above, there is sufficient case law to demonstrate that the release of a police service dog in certain circumstances constitutes excessive force in violation of the Fourth Amendment, and I find that the allegations before the court state a claim for excessive force and that additional facts are necessary before the court can determine whether

Defendants' conduct was objectively reasonable. However, I cannot find that by 2015, the law in this Circuit was clearly established that an officer applies excessive force by dispatching a canine to apprehend a person for whom the officer has an arrest warrant and who has demonstrated an inclination to flee and evade arrest. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 ("in the light of pre-existing law the unlawfulness must be apparent."). *But see Trujillo*, 2009 WL 3260724, at *4 (concluding that "a reasonable officer would be on notice that releasing a police dog, without first warning and giving a suspect the opportunity to comply, is an unconstitutionally excessive use of force") (citing *Casey*, 509 F.3d at 1285; *Marquez*, 399 F.3d at 1216). Accordingly, I find that Defendants are entitled to qualified immunity on the first theory of the excessive force claim, and I respectfully RECOMMEND that any claim for a Fourth Amendment violation based on Defendants' dispatch of Dax be DISMISSED without prejudice.

### B. Dax's Release of Plaintiff

The court turns next to the theory that Defendants violated Plaintiff's Fourth Amendment rights as a result of the amount of time Dax spent attached to Plaintiff's arm, i.e., Defendants' failure to release Dax sooner. Again, the court first considers Defendant Finn's argument that he cannot be liable because he failed to personally participate in the command directed at Dax to release Mr. Gurule.

#### 1. Personal Participation of Defendant Finn.

In this instance, I agree that the Amended Complaint does not allege Defendant Finn's personal participation. Plaintiff alleges that Dax "engaged [him] by gripping his arm with his fangs," that Dax "remained solidly attached while [Defendants] casually strolled over to the Plaintiff," who was approximately seven to ten feet away, and that "Defendant Finn handcuffed

the Plaintiff's right arm while the police dog was still attached to the Plaintiff's left arm." [#17 at 9]. Plaintiff then alleges that he received emergency medical treatment for his injury at the scene of the arrest, "[a]s soon as [Dax] was finally removed off the Plaintiff's left arm." [*Id.*] Plaintiff does not allege that Defendant Finn participated in or was responsible for calling off Dax, or that he had the authority to do so. Nor does he allege that Defendant Finn is Dax's handler.[7] Finally, Plaintiff asserts no allegations that Defendant Finn could have intervened with respect to Defendant Ambuehl's handling of Dax, but failed to do so. *Cf. Casey*, 509 F.3d at 1283 (observing that "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.")

Accordingly, I respectfully RECOMMEND that the court DISMISS without prejudice any claim for a Fourth Amendment violation based on Defendant Finn's failure to command Dax to release Plaintiff after Plaintiff was subdued.

### 2. Qualified Immunity

This court thus turns next to whether qualified immunity shields Defendant Ambeuhl from liability with respect to how long Dax was permitted to bite Plaintiff.

#### a. *Has Plaintiff Sufficiently Pled a Constitutional Violation.*

Although the matter has not been discussed by this Circuit, at least one district court within the Circuit has acknowledged that a dog bite of extended duration may rise to the level of a constitutional violation. *See Nelson v. City of Albuquerque*, No. 10-553 BB/DJS, 2012 WL 13054496, at *5 (D.N.M. Apr. 11, 2012) (citing *Priester v. Riviera Beach*, 208 F.3d 919, 924-25

---

[7] Plaintiff does not assert specific allegations with respect to Defendant Ambuehl's actions with respect to the release of Plaintiff from Dax's grip either, but does allege that Defendant Ambuehl was a "canine dog handler" [#17 at 9] and Defendant Ambuehl does not contest personal participation in either the dispatch or release of Dax.

(11th Cir. 2000) (holding that a police dog bite is excessive after a suspect ceases to flee or has been subdued)), *judgment amended by* --- F. Supp. 3d ----, 2017 WL 4776730 (D.N.M. Oct. 20, 2017), *appeal docketed*, No. 17-2199 (10th Cir. Nov. 27, 2017).   And a substantial number of courts in other jurisdictions have found and held that "excessive duration of [dog] bite...could constitute excessive force."   *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998).   *See Escobar v. Montee*, No. 3:15-CV-1962-D, 2016 WL 397087, at *8 (N.D. Tex. Feb. 2, 2016) (observing courts routinely consider the duration of a dog bite in assessing the reasonableness of the use of force, and collecting cases across circuits and districts).   *See also Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637, 671 (S.D. Ohio 2011) (denying summary judgment on excessive force claim: "[t]here is evidence suggesting that [officer] allowed [dog] to continue to bite [suspect] for an extended period of time, up to forty-five seconds ... [and suspect] maintains that he did not kick [dog]" or refuse to comply with officer's orders), *aff'd*, 700 F.3d 779, 787 (6th Cir. 2012); *Dunn v. Nance*, No. CV–08–23–S–BLW, 2009 WL 1956429, at *7 (D. Idaho July 6, 2009) ("Ordering or allowing a police canine to bite a suspect for more than one minute under the circumstances described above [i.e., the plaintiff was lying flat on the ground, not resisting, and with his arms outstretched in full view of the officers] could amount to excessive force.").   *Cf. Kuha v. City of Minnetonka*, 365 F.3d 590, 601 (8th Cir. 2003) (holding officers entitled to summary judgment: "[i]n light of the short time frame at issue [i.e., ten to fifteen seconds] and the conditions under which Kuha fled and was found [i.e., hiding in marsh grass], we conclude that as a matter of law the officers' actions after Kuha was bitten [i.e., searching area to ensure no weapons were hidden] were not objectively unreasonable")

*abrogated on other grounds by Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007).

Mr. Gurule alleges that the encounter with Dax lasted over one minute, and that he endured Dax's bite while Defendants "casually strolled over who were approx. 7-10 ft. away." [#17 at 9]. I find Plaintiff has stated a claim as to Defendant Ambuehl for the violation of his Fourth Amendment rights arising from the length of time Dax was permitted to bite Plaintiff..

b.     *Is the Constitutional Right Clearly Established.*

It is clearly established in the Tenth Circuit that officers may not continue to use force against a suspect who is effectively subdued. *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (holding that where the suspect fled through oncoming traffic and never ceased to vigorously struggle after being caught, it was reasonable to pin the suspect to the ground, but unreasonable to keep the suspect pinned once he was no longer a legitimate flight risk). *See Perea v. Baca*, 817 F.3d 1198, 1204-05 (10th Cir. 2016) (citing *Fancher v. Barrientos*, 723 F.3d 1191, 1201 (10th Cir. 2013) (although a single shot by an officer may have been justified, the following six shots were clearly unlawful because they occurred after arrestee no longer posed a threat of serious harm); *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) (continuing to strike detainee after he had been subdued was clearly unconstitutional); *Herrera v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 361 F. App'x 924, 929 (10th Cir. 2010) (use of force against detainee who officers initially believed would flee, but who demonstrated that further flight was unlikely, was clearly excessive); *Gouskos v. Griffith,* 122 F. App'x 965, 977 (10th Cir. 2005) (officer's

continued use of force against a subdued arrestee precluded qualified immunity)).[8]  *See also*

*Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1193 (10th Cir. 2001) ("[w]here a

person has submitted to the officers' show of force without resistance, and where an officer has

no reasonable cause to believe that person poses a danger to the officer or to others, it may be

excessive and unreasonable to continue to aim a loaded firearm directly at that person").

    At least two courts in this District have applied this well-established law to an excessive

force case involving the use of a police service dog.  *See Savannah v. Collins*, No. 12–cv–

02403–RBJ–MJW, 2015 WL 4237592, at *4 (D. Colo. Jul 14, 2015) ("As for whether the right

is clearly established…both Tenth Circuit precedent and common sense establish that giving an

attack command to an unrestrained police dog after a suspect has been subdued would be

excessive and unreasonable.") (citing *Priester*, 208 F.3d at 919 and concluding "that the Tenth

Circuit would probably come out similarly"); *Trujillo*, 2009 WL 3260724, at *3 (denying

qualified immunity on summary judgment motion based on "issue regarding the reasonableness

of [officer's] allegedly permitting [canine] to bite Plaintiff on the face after the mattress was

turned over," noting "a reasonable jury could find that at that point Plaintiff was plainly not a

threat).[9]

---

[8] Both *Weigel* and *Perea* involved use of deadly force.  However, nothing in the analyses contained therein suggests the cases cannot be cited for the stated proposition in a case involving non-deadly force.

[9] This court notes that the Fifth Circuit relied on excessive force cases not involving dog-bites to hold that officers had "fair warning' that subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable." *Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) ("Lawfulness of force ... does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.").

Given the cited case law, I find that a reasonable officer would have known in 2015 that continued application of force to a suspect who was submissive and on the ground, and who was not acting in a threatening or aggressive manner, could constitute excessive force, and that the prohibition against excessive force applies in the context of use of a police service dog. This conclusion finds support in other circuits as well. *See Cooper*, 844 F.3d at 525 (affirming denial of qualified immunity where police dog "continued biting [the nonresistant suspect] for one to two minutes"; officer did not command the dog to release his bite until suspect had rolled onto his stomach and was in handcuffs; and officer had "no reason to believe that [the suspect] posed a threat"); *Abbott,* 705 F.3d at 732, 733 (observing that prior to 2011 it was well-established that "police officers cannot continue to use force once a suspect is subdued," and "officers could not repeatedly use an impact weapon to beat into submission a person who was not resisting or was merely passively resisting officers' orders"); *LaLonde v. County of Riverside,* 204 F.3d 947, 961 (9th Cir. 2000) ("the use of such weapons (e.g., pepper sprays; police dogs) may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force"); *Priester*, 208 F.3d at 923-24 (holding it was objectively unreasonable for officers to allow a dog to bite and hold a suspect for two minutes—which it described as "an eternity"—where he was compliant with orders and not resisting arrest); *Arrington v. U.S.*, 473 F.3d 329, 339 (D.C. Cir. 2006) (reversing grant of qualified immunity amidst factual dispute as to whether arrestee was armed and not yet subdued when officers beat him and ordered police dog to bite him). *Cf. Jones v. Fransen*, 837 F.3d 843, 852 & n.5 (11th

Cir. 2017) (concluding that police officers were entitled to qualified immunity in a dog bite case where the plaintiff did not allege (1) that he surrendered during the dog bite or (2) that police officers unnecessarily prolonged the dog attack).[10]  *Cf. also Becker*, 821 F.3d at 924-25 (affirming denial of qualified immunity on motion for summary judgment on claim that after arrestee had surrendered with his hands on his head, defendant officer used excessive force by pulling him down the steps and placing his knee on his back while allowing police canine to continue to bite him, a total of a "few minutes," resulting in arrestee's calf being "torn out completely," and permanent muscle and nerve damage).

Thus, at this juncture without making any predictions as to whether Plaintiff can survive summary judgment or ultimately prevail at trial, this court respectfully RECOMMENDS that Defendant Ambuehl's Motion to Dismiss be DENIED as to the theory that his failure to command Dax to release Plaintiff earlier constitutes excessive force in violation of the Fourth Amendment.

## CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

1. Defendant Michael Finn's Motion to Dismiss [#45] be **GRANTED**;

---

[10] Specifically, the Eleventh Circuit reversed the district court's denial of qualified immunity on motion to dismiss excessive force claim, noting plaintiff "led police into physically challenging terrain with brush and boulders…, and he did not respond in any way to…K–9 warnings…[and] a reasonable officer…could have been concerned, at the time [the dog] was released, about entering the heavy brush to apprehend [plaintiff] and being met by a potential ambush," and noting that "nothing in the complaint suggests that the officers gratuitously prolonged the attack under the circumstances." *Id.* (subsequently distinguished by *Chatman v. Ft. Lauderdale Police Department*, 688 F. App'x 870, 874 (11th Cir. 2017)).

2.  Defendant Brent Ambuehl's Motion to Dismiss [#52] be **GRANTED IN PART and DENIED IN PART**.[11]

DATED: March 16, 2018                    BY THE COURT:

 

 

_____
Nina Y. Wang
United States Magistrate Judge

---

[11] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).